UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NICOLE M.,[1]                         )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        No. 1:21-cv-01970-MJD-JRS
                                      )
KILOLO KIJAKAZI,                      )
                                      )
                                      )
                Defendant.            )

**ENTRY ON JUDICIAL REVIEW**

Claimant Nicole M. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and

Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42

U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the

Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

## I.  Background

Claimant applied for DIB and SSI in August 2019, alleging an onset of disability as of March 15, 2016.[2] [Dkt. 12-5 at 13.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Crystal White-Simmons ("ALJ") on October 23, 2020. [Dkt. 12-2 at 39.] On November 24, 2020, ALJ White-Simmons issued her determination that Claimant was not disabled. *Id.* at 16. The Appeals Council then denied Claimant's request for review on May 12, 2021. *Id.* at 2. Claimant timely filed her Complaint on July 7, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to  42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment

---

[2] At her hearing, Claimant amended her alleged onset date to February 6, 2019. *See* [Dkt. 12-2 at 43.]
[3] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her

past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step

three, cannot perform her past relevant work, but can perform certain other available work, she is

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's

limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)

(citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a

conclusive finding that the claimant either is or is not disabled, then she need not progress to the

next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR

§ 404.1520(a)(4)).

     In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial

of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950

F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she

"must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at

813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's

decision "will be upheld if supported by substantial evidence," which is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*,

923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts,

decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v.

Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's

disability determination, the Court must affirm the decision even if "reasonable minds could

differ" on whether the claimant is disabled. *Id.*

### III.   ALJ Decision

ALJ White-Simmons first determined that Claimant had not engaged in substantial

gainful activity since the amended alleged onset date of February 6, 2019. [Dkt. 12-2 at 22.] At

step two, the ALJ found that Claimant had the following severe impairments: "bipolar disorder;

generalized anxiety disorder; panic disorder." *Id*. The ALJ also determined that Claimant's

tremors, migraines, and dizzy spells constituted non-severe impairments. *Id.* At step three, the

ALJ found that Claimant's impairments did not meet or equal a listed impairment during the

relevant time period. *Id.* at 23. ALJ White-Simmons then found that, during the relevant time

period, Claimant had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is limited to simple, routine, and repetitive
> tasks performed in a work environment free from fast-paced production demands,
> involving on simple work-related decisions, few workplace changes, and no tandem
> tasks. The claimant is limited to occasional interaction with coworkers and
> supervisors, and brief and superficial interaction with the public. In addition to
> regularly scheduled breaks, the claimant would be off-task for up to 10% of the
> workday.

*Id.* at 24.

At step four, the ALJ found that Claimant was not able to perform her past relevant work

during the relevant time period. *Id*. at 28. At step five, relying on testimony from a vocational

expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in

significant numbers in the national economy. *Id*. Accordingly, ALJ White-Simmons concluded

Claimant was not disabled. *Id.* at 29.

### IV.   Discussion

Claimant asks the Court to reverse ALJ White-Simmons' decision on numerous grounds,

including that the ALJ erred by (1) failing to adequately assess Claimant's subjective symptoms,

and (2) failing to articulate the rationale behind her finding that Claimant would be off-task up to 10 percent of the workday. [Dkt. 14.] The Commissioner responds that reversal is inappropriate because the ALJ based her decision on substantial evidence. [Dkt. 17.] As explained below, the Court agrees with Claimant that the ALJ's decision must be reversed. [4]

### A. The ALJ Erred in Her Assessment of Claimant's Subjective Symptoms

Claimant argues that "[t]he ALJ committed reversible error in rejecting [Claimant's] credibility concerning the severity of [her] mental impairments." [Dkt. 14 at 28.] Pursuant to Social Security Ruling 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*; 20 CFR § 404.1529(c)(1).[5] The ALJ must then consider the claimant's alleged symptoms in light of her daily activities; the location, duration, frequency, and intensity of the claimant's symptoms;

---

[4] Claimant additionally argues that the ALJ erred by failing to account for Claimant's unsuccessful work attempt, reactions to stress in the workplace, and Paragraph B limitations. However, because the ALJ's decision must be reversed on other grounds, detailed below, the Court need not address Claimant's additional arguments. On remand, the ALJ must carefully consider and account for all of Claimant's limitations, and must connect her findings to the evidence of record.

[5] Social Security Ruling 16-3p, which rescinded Social Security Ruling 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her *credibility*. SSR 16-3p, 2017 WL 5180304, at *2. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests").

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve the symptoms. 20 CFR § 404.1529(c)(3). The Court's review of this determination is generally deferential unless "after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, at 751 (7th Cir. 2010). The ALJ's subjective symptom evaluation may be patently wrong where she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (citation and internal quotation marks omitted).

At her hearing, Claimant testified that she is unable to work "because being in [a work] environment was too overwhelming" due to her mental impairments. [Dkt. 12-2 at 49.] She explained that work became "too much for me to handle" because of anxiety attacks, bipolar disorder, and depression. *Id.* Claimant testified she has "four or five" anxiety attacks per month that can be triggered by stress or "for no particular reason," and her depression causes crying spells three or four times per week and reduced motivation. *Id.* at 51, 53. She explained that therapy and medication helped with her symptoms, but has "a lot of times where my anxiety is still very high." *Id*. at 50. Claimant testified to experiencing memory issues and auditory hallucinations. *Id.* at 57, 62. She further testified to having tremors in both hands which results in "a hard time" holding objects, and migraine headaches that occur once per week. *Id.* at 56-57. When experiencing a migraine, Claimant stated she takes Excedrin, which sometimes does not help, and "will go into a dark room, or stay someplace where it's quiet." *Id.* at 57.

As for daily activities, Claimant testified she has "a lot of anxiety being around people" because she feels like people are always watching and judging her. *Id.* at 59. As such, she rarely leaves the house other than to get groceries or pick up medicine, and will often bring one of her children with her when she does. *Id.* She explained that "I'll order my groceries online . . . [a]nd then go to the store to pick it up" in order to avoid being around many people. *Id.* at 59-60. Claimant testified that she, her husband, and her children "help each other" with chores around the house, but she needs instructions when cooking so she doesn't forget what to do, and often lacks the motivation to bathe or get out of bed. *Id.* at 60-61.

In addressing Claimant's subjective symptoms, the ALJ regurgitated the following boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely supported by the evidentiary record.

[Dkt. 12-2 at 25.] The ALJ then pointed to Claimant's activities of daily living to support her decision:

> She lives in a house with her husband and three children, ages 13-16, and is able to drive a car, prepare meals, use a computer to check emails, perform basic household chores, and assist her children with their homework. She is also able to go shopping in stores and attend medical appointments, although she testified that her anxiety levels increase significantly when she is outside of her home. The claimant also reported some degree of impairment in focus and memory, but that she remains capable of paying bills, leaving her home alone, and managing her medications with a pillbox.

[Dkt. 12-2 at 25.]

However, none of the activities cited by the ALJ support her determination that Claimant is able to maintain full-time employment in a competitive work environment, and therefore do

not constitute adequate reasons to reject Claimant's subjective symptoms. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why [performing daily activities] was inconsistent with [the claimant's] description of her pain and limited mobility."). The Court cannot see how being able to drive a car or check emails translates to a finding of non-disability, and the ALJ does not explain as much. Although it was appropriate for the ALJ to consider all relevant evidence when assessing Claimant's credibility, an ALJ should not place "undue weight" on performing household chores or daily activities. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *Cullinan*, 878 F.3d at 603 ("the ALJ did not explain why [performing daily activities] was inconsistent with [the claimant's] description of her pain and limited mobility"). Indeed, the Seventh Circuit has routinely admonished that "[t]he 'sporadic performance [of household chores and the like] does not establish that a person is capable of engaging in substantial gainful activity.'" *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)); *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("[M]inimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (the ability to perform "activities of daily living," such as the ability to "drive and shop," does not undermine an allegation of disability, especially where the claimant "testified that she had one or two good days each week" during which those activities may be concentrated).

Moreover, the ALJ's summary of Claimant's daily activities is not entirely accurate. As noted, Claimant testified that she goes shopping and completes household chores with assistance from her husband and children. [Dkt. 12-2 at 59-60.] She also testified that she usually orders groceries online to avoid being around people. *Id.* The ALJ seemingly ignores these

qualifications, and it is improper to do so. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (error for the ALJ to ignore the claimant's "qualifications as to *how* he carried out those activities" (emphasis in original)).

The ALJ additionally rejected Claimant's subjective allegations on the basis that her mood remained relatively stable, reasoning as follows:

> Treatment notes prepared between March 2019 and May 2019 reflect that the claimant acknowledged stabilization in her depression, but some increase in levels of anxiety due to persistence of various social stressors.…Mental status examinations during this period remained largely stable, with anxious and depressed mood but logical thoughts, normal speech and presentation, and no evidence of overt thought disorder.

> At her medication review on June 28, 2019, the claimant reported that her mood remained relatively stable but that she was having increased social anxiety and had experienced several panic attacks since her last appointment.

> The claimant continued to note stable levels of depression and some improvement in her levels of anxiety at appointments in July and August of 2019.

> Psychiatric progress notes prepared by Dr. Daas on October 11, 2019, indicate that the claimant reported "feeling better" and that her anxiety was improved, her mood stable, and that she was compliant with her medication and no longer feeling suicidal.

[Dkt. 12-2 at 26.]

However, these are also not adequate grounds for rejecting Claimant's subjective symptoms; the Seventh Circuit has acknowledged that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). Further, "[s]imply because one is characterized as 'stable' or 'improving' does not necessarily mean that" one is capable of full-time work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014), *as amended* (Aug. 20, 2014). In this case, several progress notes indicate that Claimant's conditions remained stable only when she was not in a

work environment, and that Claimant destabilized rapidly after she returned to a work setting. *See, e.g.*, [Dkt. 12-12 at 49] ("[I]n the context of not dealing with any work stress which would likely be harmful for the client, she seems stable and coping generally well doing work keeping the home up and parenting the kids."); *id.* at 98 ("Writer discussed with the client how her anxiety and depression are improved, but believed that if she attempted to work, she would again quickly declined [sic] in functioning and have panic level anxiety, as she did when she recently attempted to work from home, and quickly became unable to function in the first week."); *id.* at 109 ("The client is aware that she can get feeling better when not under the stress of work, and writer does believe the client would quickly deteriorate in a typical work setting, as she started to decline rapidly in a recent attempt to work."). This evidence illustrates a critical distinction that the ALJ should not have overlooked.

Ultimately, the ALJ's rejection of Claimant's subjective symptoms is not grounded in substantial evidence. "[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). ALJ White-Simmons's decision must therefore be reversed. On remand, the ALJ shall properly evaluate Claimant's subjective symptoms as required by SSR 16-3p, 2016 SSR LEXIS 4, and shall not reject Claimant's statements based on her engagement in minimal activities of daily living or the perceived stability of her condition.

**B.   The ALJ's Finding that Claimant Would be Off-Task for 10 Percent of the Workday is Not Based in Substantial Evidence**

Claimant additionally argues that the ALJ does not explain how being off-task 10 percent of the workday would adequately accommodate Claimant's impairments and resulting symptoms.

At the hearing, the ALJ asked the VE to evaluate an individual that, "in addition to regularly scheduled breaks, . . . would be off task ten percent of the time during an eight-hour workday due to mental impairments and migraine headaches." [Dkt. 12-2 at 65.] In responding to this hypothetical question, the VE testified that there is work that such individual could perform. *Id.* at 65-66. When the ALJ added to the hypothetical question that "the individual would be off task 20 percent of the workday," the VE responded that such a limitation would be work-preclusive. *Id.* at 68. In her decision, the ALJ then included a limitation that, "in addition to regularly scheduled breaks, the claimant would be off-task for up to 10% of the workday" in Claimant's RFC. *Id.* at 24.

After reviewing the record, the Court does not find any explanation as to how ALJ White-Simmons arrived at this 10 percent figure for off-task behavior in the workplace. This situation is similar to that in *Harris v. Saul*, 2020 U.S. Dist. LEXIS 6667, 2020 WL 221964 (E.D. Wis. Jan. 15, 2020), in which the court noted that "the ALJ apparently chose the ten percent [off-task] figure because that is where most vocational experts will draw the line between the acceptable and unacceptable, not because it was supported by substantial evidence." *Id.* at *3 (internal citation omitted).

As Claimant underscores, the Seventh Circuit has made clear that "an ALJ must confront evidence that a claimant cannot meet the benchmarks for off-task behavior and absenteeism." [Dkt. 14 at 27-28] (citing *Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021)). The ALJ in this case failed to articulate her evaluation of evidence supporting off-task behavior that would likely exceed the ALJ's ten percent determination. For example, Claimant's own testimony

indicates she was experiencing crying spells three or four times a week and that she needed to

see her therapist once a week and see her physiatrist every six to eight weeks. [Dkt. 12-2 at 52,

53.] Claimant also testified to needing to go into a dark room or other quiet place when she

experienced a migraine. *Id.* at 57. Further, in response to questioning from Claimant's attorney,

the VE testified that an individual who would be absent for two hours each week and for another

two hours every six weeks for medical appointments "would not be able to perform competitive

work." *Id.* at 69-70. The VE also testified that all competitive employment would be eliminated

for a person who has "uncontrollable and unpredictable" crying spells one-to-three times a week,

as well as for a person who would need to "withdraw to a dark room for 30 minutes" each week

due to migraines. *Id.* at 70. The ALJ seemingly ignored this critical testimony. The Court

therefore agrees with Claimant's argument that "the off-task limitation appears to be arbitrary and

provided only because the VE testified that ten percent off-task behavior still provided for jobs,

but 20 percent off task was work preclusive." [Dkt. 14 at 26.]

Ultimately, the ALJ erred by failing to articulate the reasoning behind Claimant's off-task

limitation and ignoring relevant testimony from the VE, and thus the requisite "logical bridge" is

missing from her decision. Because the ALJ's analysis in these areas does not "say enough to

enable a review of whether the ALJ considered the totality of a claimant's limitations," remand is

necessary. *Lothridge*, 984 F.3d at 1233. On remand, the ALJ must take care to fully articulate the

rationale behind limitations provided in the RFC, and must confront evidence that supports

Claimant's disability claim.

## V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and

**REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  22 JUL 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.